# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

NASH THIRY,

                Plaintiff,

v.

M&M USA MOTORS, INC.,

                Defendant.

Case No.: **6:20-cv-01472**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Nash Thiry ("Nash") by and through his attorneys, alleges the following against Defendant M&M USA Motors, Inc. ("M&M"):

## INTRODUCTION

1.    Count I of Nash's Complaint is based upon violations of the Federal Odometer Act ("FOA"), 49 U.S.C. §32703 *et seq.* The FOA is a federal statute which prohibits tampering or conspiring to tamper with a motor vehicle's odometer.

2.    Count II of Nash's Complaint is based upon the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), §501.201, Fla. Stat. The purpose of FDUTPA is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

3.    Count III of Nash's Complaint is based upon express and implied warranties under the Florida Uniform Commercial Code ("UCC"), §§672.313, 672.314, *et seq.*, Fla. Stat.

4.      Count IV of Nash's Complaint is based upon the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. §2301 *et seq.* MMWA gives consumers a right to bring suit for damages and other legal and equitable relief, including attorneys' fees and costs, for failure of a warrantor to comply with the terms of a warranty.

5.      Count V of Nash's Complaint is based upon the common-law action of fraudulent misrepresentation.

6.      Count VI of Nash's Complaint is based upon the common-law action of negligent misrepresentation.

7.      Count VII of Nash's Complaint is based upon the common-law action of fraud in the inducement.

8.      Count VIII of Nash's Complaint is based upon the common-law action of constructive fraud.

9.      Count IX of Nash's Complaint is based upon M&M's misleading advertising, as prohibited by Florida statute. §817.41, Fla. Stat.

## JURISDICTION AND VENUE

10.      Jurisdiction of this Court arises under 28 U.S.C. §§1331, 1367 and 49 U.S.C. §32710.

11.      Venue is proper pursuant to 28 U.S.C. §1391(b)(1), (2) because M&M resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

12.      M&M is "at home" in Florida; therefore, personal jurisdiction is established.

## PARTIES

13.     Nash is a "consumer" as that terms is defined under §501.203(7), Fla. Stat.

14.     M&M is an Independent Dealer licensed by Florida Highway Safety and Motor Vehicles with its principal place of business located in Osceola County, at 2420 Smith St., Unit A-D, Kissimmee, FL 34744, and can be served at its registered agent Alex Pina Co. located at 8400 NW 36th Street, Suite 450, Doral, FL 33166.

15.     M&M is a "dealer" as that term is defined under §501.975(2), Fla. Stat.

16.     M&M acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTS

### Purchase of the Vehicle

17.     In or around early January of 2020, Nash saw an advertisement on Carfax.com for a 2009 Ford Mustang (VIN 1ZVHT84N595121926) (the "Vehicle") being offered by M&M.

18.     M&M was advertising the Vehicle at $8,300 with 47,667 miles.

19.     The Vehicle was identified by the stock #11601.

20.     Enticed by M&M's advertisement, Nash went to M&M on or about January 23, 2020 and expressed interest in purchasing the Vehicle.

21.     M&M's representatives prepared the Bill of Sale for the Vehicle, identified by the stock #11601.

22.     The Bill of Sale contained a "Pricing Recap" that again indicated a mileage

of "47,667".

23.     When Nash asked why the Odometer Disclosure Statement and the Bill of Sale stated that the Vehicle's odometer reading was "exempt", he was told by M&M's representative that it was due to the age of the Vehicle.

24.     At the time of sale, the Vehicle's odometer registered approximately 47,000 miles.

25.     Upon information and belief, M&M disconnected, reset, or altered the Vehicle's odometer to make it represent a lower number than the Vehicle's actual mileage.

26.     Upon information and belief, M&M had an unknown party disconnect, reset, or alter the Vehicle's odometer to make it represent a lower number than the Vehicle's actual mileage.

27.     Upon information and belief, M&M knew that the Vehicle's odometer had been disconnected, reset, or altered at the time of the purchase.

28.     Upon information and belief, M&M knew that the Vehicle's odometer was not accurately representing the Vehicle's actual mileage.

29.     The week following his purchase of the Vehicle, Nash took it to a non-party mechanic shop for maintenance.

30.     Upon receiving the service estimate, Nash was shocked to see that the mechanic shop was reporting the Vehicle's actual mileage at 165,778 miles.

31.     Confused, Nash obtained a car report and discovered that the Vehicle had passed the 60,000-mile mark six years prior.

32.     M&M misrepresented the Vehicle's actual mileage to Nash on multiple

occasions, including on its online advertising, in the Bill of Sale, and in the Pricing Recap.

33.     The Vehicle's actual mileage exceeds the represented mileage by approximately 120,000 miles.

## Damages

34.     M&M's actions have caused Nash actual economic damages in the form of an inflated purchase price, well in excess of the Vehicle's fair market value and/or of the amount Nash would have paid had he been given an accurate description of the Vehicle.

35.     M&M's actions have caused Nash actual damages in the form of an increased risk of mechanical, structural or other failure that could likely result in an accident causing physical injury of Nash, Nash's passengers or third parties, as well as property damage.

36.     M&M's actions have caused Nash actual emotional damages, including anxiety, frustration, and mental pain and anguish.

37.     M&M's actions have caused Nash actual damages in the form of personal time and resources spent attempting to resolve his dispute with M&M without the need for Court intercession.

## Warranties

38.     Nash only discovered the Vehicle's actual condition after accepting the Vehicle.

39.     M&M's assurances and the difficulty of discovery of the nonconformities reasonably induced Nash's acceptance of the Vehicle.

40.     The Vehicle's nonconformity substantially impairs its value to Nash.

41.     Nash contacted M&M via certified mail on or about June 26, 2020, revoking

his acceptance of the Vehicle pursuant to Fla. Stat. §672.608.

42.     M&M ignored Nash's communications.

## Arbitration

43.     Thereafter, on or about June 19, 2020, Nash filed an arbitration demand with AAA as provided for in the Vehicle's retail installment sales contract.

44.     M&M ignored the AAA's confirmation and initiation of arbitration.

45.     On or about July 27, 2020, AAA declined Nash's arbitration request, citing M&M's "failure to remit" the "required fees."

46.     Under Rule 1(d) of the AAA Consumer Arbitration Rules, either party may choose to submit its dispute to the appropriate court for resolution after AAA declines to administer an arbitration.

## COUNT I

### FOA, 49 U.S.C. §32703, *et seq*.

47.     Nash incorporates paragraphs 18 through to 38 as though the same were set forth at length herein.

48.     M&M's conduct violated the FOA. The FOA governs odometer disclosure procedure in connection with the sale of motor vehicles and prohibits tampering with a motor vehicle's odometer. 49 U.S.C. §§32703, 32705. M&M violated the FOA by engaging in the following conduct:

      a.  M&M disconnected, reset, or altered the Vehicle's odometer to make it represent a lower number than the Vehicle's actual mileage (§32703(2));

*Nash Thiry v. M&M USA Motors, Inc.*
Complaint

b. M&M had an unknown third-party disconnect, reset, or alter the Vehicle's odometer to make it represent a lower number than the Vehicle's actual mileage (§32703(2));

c. M&M conspired with an unknown party to violate §3270 (§32703(4));

d. M&M falsely stated the Vehicle's actual mileage (§32705(2)).

49. M&M's actions, as described above, were committed with the intent that Nash purchased the Vehicle and pay more than the Vehicle's actual value and/or for more than Nash would have paid had he been given an accurate description of the Vehicle.

50. As a result of M&M's violations of FOA, Nash is entitled to recover treble his actual damages, or $10,000.00, whichever is greater. §32710(a).

51. Furthermore, as a result of M&M's violations of the FOA, upon entry of a judgment in favor of Nash, the Court is required to award Nash his costs and reasonable attorneys' fees. §32710(b).

## COUNT II

### FDUTPA, §501.976, Fla. Stat.

52. Nash incorporates paragraphs 18 through to 43 as though the same were set forth at length herein.

53. M&M's conduct violated the FDUTPA. FDUTPA makes several acts or practices illegal when done in connection with the sale of a vehicle. §501.976, Fla. Stat. M&M violated the FDUTPA by engaging in the following conduct:

a. M&M represented the previous usage or status of a vehicle to be

something that it was not, or make usage or status representations when M&M did not have correct information regarding the history of the Vehicle to support the representations (§501.976(3));

b. M&M represented the quality of care, regularity of servicing, or general condition of a vehicle without knowing the same to be true and supportable by material fact (§501.976(4));

c. M&M provided express and/or implied warranties and failed to honor them (§501.976(7));

d. M&M obtained signatures from Nash on contracts that were not fully completed at the time or which did not reflect accurately the negotiations and agreement between Nash and M&M (§501.976(9));

e. M&M altered or changed, or had an unknown party alter or change, the Vehicle's odometer mileage (§501.976(12)).

54.    As a result of M&M's violations of FDUTPA, Nash is entitled to recover his actual damages and attorneys' fees. §§501.2105, 501.211.

<u>**COUNT III**</u>

**Breach of Warranties, §§672.313, 672.314, and 680.21(1), Fla. Stat.**

55.    Nash incorporates paragraphs 18 through to 43 as though the same were set forth at length herein.

56.    M&M expressly warranted to Nash that the Vehicle had 47,667 miles on it at the time of sale. §680.21(1), Fla. Stat.

57.    The mileage of the Vehicle was a basis for Nash's decision to purchase the

*Nash Thiry v. M&M USA Motors, Inc.*
Complaint

Vehicle.

58.     M&M breached the express warranty because the Vehicle actually had approximately 165,778 miles on it at the time of sale, rendering it unable to conform with the contract's description.

59.     M&M impliedly warranted that the Vehicle was merchantable, including that the odometer worked properly and had not been tampered with. §672.314, Fla. Stat.

60.     M&M breached the warranty of merchantability given to Nash by selling Nash a Vehicle that had hidden defects that make the Vehicle unable to pass without objection in the trade under the contract description, and is not fit for the ordinary purposes for which such goods are used. §672.314, Fla. Stat.

61.     Specifically, M&M warranted that the Vehicle had 47,667 miles at the time of sale.

62.     Nash revoked acceptance.

63.     M&M is therefore liable to Nash to accept the return of the Vehicle, and to refund all monies paid by Nash and to reimburse him for all actual damages. §672.711(1)(b), Fla. Stat.

## COUNT IV

### MMWA, 15 U.S.C. §2301 *et seq*.

64.     Nash incorporates paragraphs 18 through to 43 as though the same were set forth at length herein.

65.     M&M warranted that the Vehicle had 47,667 miles at the time of sale.

66.     At the time of sale, the Vehicle actually had approximately 165,778 miles.

*Nash Thiry v. M&M USA Motors, Inc.*
Complaint

67.     M&M is liable to Nash under the MMWA for damages and equitable relief. 15 U.S.C. §2310(d)(1).

68.     The MMWA entitles Nash to recover attorneys' fees and expenses. 15 U.S.C. §2310(d)(2).

## COUNT V

### Fraudulent Misrepresentation

69.     Nash incorporates paragraphs 18 through to 38 as though the same were set forth at length herein.

70.     Nash is entitled to rescission of the purchase due to M&M's fraudulent misrepresentation:

    a.  M&M had a duty under FOA and FDUTPA to represented accurately the condition of a Vehicle;

    b.  M&M had a duty under FOA and FDUTPA not to alter or change the Vehicle's odometer mileage;

    c.  M&M fraudulently misrepresented to Nash, on several occasions, that the Vehicle only had 47,667 miles on it, when it actually had approximately 165,778 miles;

    d.  M&M published an advertisement identifying the Vehicle and the inaccurate mileage;

    e.  M&M represented to Nash that the information on its advertisement was correct;

    f.  M&M prepared purchase documents for the Vehicle indicating

*Nash Thiry v. M&M USA Motors, Inc.*
Complaint

inaccurate mileage;

g.   M&M knew or should have known that its representations, at the time of making them, were false;

h.   M&M knew or had reason to know that vehicle purchase papers are complex documents that are not easy to understand;

i.   M&M knew or had reason to know that Nash would rely on M&M's expertise in preparing the purchase documents;

j.   M&M presented the sale documents to Nash and included an inaccurate mileage representation with reason to know that Nash would not be able to discover M&M's fraud until after the purchase;

k.   M&M's actions were intended to induce Nash to sign the vehicle sale contract;

l.   M&M fraudulently misrepresented to Nash, on several occasions, that the Vehicle only had 47,667 miles on it, when it actually had approximately 165,778 miles;

m.   M&M knew or should have known that its representations, at the time of making them, were false;

n.   M&M's representations were intended to induce Nash to sign the vehicle sale contract;

o.   Nash reasonably relied on M&M's representations;

p.   A reasonable person would have relied on M&M's representations;

q.   Nash was harmed by M&M's representations by agreeing to

purchasing the Vehicle or purchasing the Vehicle for more than its actual value and/or for more than Nash would have paid had he been given an accurate description of the Vehicle;

    r.  M&M benefited from its misrepresentations by selling the Vehicle to Nash for more than its actual value and/or for more than Nash would have paid had he been given an accurate description of the Vehicle.

71.    Denying rescission of the purchase would be inequitable.

72.    As a result of M&M's fraudulent misrepresentations, Nash is entitled to recover his actual damages, including out-of-pocket costs, and rescission of the purchase.

73.    If the Court finds that M&M's actions were deliberately and knowingly taken, M&M may be liable to Nash for punitive damages.

## COUNT VI

### Negligent Misrepresentation

74.    Nash incorporates paragraphs 18 through to 38 as though the same were set forth at length herein.

75.    Nash is entitled to rescission of the purchase due to M&M's negligent misrepresentation:

    a.  M&M had a duty under FOA and FDUTPA to represented accurately the condition of a Vehicle;

    b.  M&M had a duty under FOA and FDUTPA not to alter or change the Vehicle's odometer mileage;

    c.  M&M fraudulently misrepresented to Nash, on several occasions, that

the Vehicle only had 47,667 miles on it, when it actually had approximately 165,778 miles;

d.  M&M published an advertisement identifying the Vehicle and the inaccurate mileage;

e.  M&M represented to Nash that the information on its advertisement was correct;

f.  M&M prepared purchase documents for the Vehicle indicating inaccurate mileage;

g.  M&M knew or should have known that its representations, at the time of making them, were false;

h.  M&M knew or had reason to know that vehicle purchase papers are complex documents that are not easy to understand;

i.  M&M knew or had reason to know that Nash would rely on M&M's expertise in preparing the purchase documents;

j.  M&M presented the sale documents to Nash and included an inaccurate mileage representation with reason to know that Nash would not be able to discover M&M's fraud until after the purchase;

k.  M&M's actions were intended to induce Nash to sign the vehicle sale contract;

l.  M&M fraudulently misrepresented to Nash, on several occasions, that the Vehicle only had 47,667 miles on it, when it actually had approximately 165,778 miles;

m.  M&M knew or should have known that its representations, at the time of making them, were false;

n.  M&M's representations were intended to induce Nash to sign the vehicle sale contract;

o.  Nash reasonably relied on M&M's representations;

p.  A reasonable person would have relied on M&M's representations;

q.  Nash was harmed by M&M's representations by agreeing to purchasing the Vehicle or purchasing the Vehicle for more than its actual value and/or for more than Nash would have paid had he been given an accurate description of the Vehicle;

r.  M&M benefited from its misrepresentations by selling the Vehicle to Nash for more than its actual value and/or for more than Nash would have paid had he been given an accurate description of the Vehicle.

76.  Denying rescission of the purchase would be inequitable.

77.  As a result of M&M's negligent misrepresentations, Nash is entitled to recover his actual damages, including out-of-pocket costs, and rescission of the purchase.

## COUNT VII

### Fraud in the Inducement

78.  Nash incorporates paragraphs 18 through to 38 as though the same were set forth at length herein.

79.  Nash is entitled to rescission of the purchase due to M&M's fraud in the inducement:

*Nash Thiry v. M&M USA Motors, Inc.*
Complaint

14/21

a. M&M had a duty under FOA and FDUTPA to represented accurately the condition of a Vehicle;

b. M&M had a duty under FOA and FDUTPA not to alter or change the Vehicle's odometer mileage;

c. M&M fraudulently misrepresented to Nash, on several occasions, that the Vehicle only had 47,667 miles on it, when it actually had approximately 165,778 miles;

d. M&M published an advertisement identifying the Vehicle and the inaccurate mileage;

e. M&M represented to Nash that the information on its advertisement was correct;

f. M&M prepared purchase documents for the Vehicle indicating inaccurate mileage;

g. M&M knew or should have known that its representations, at the time of making them, were false;

h. M&M knew or had reason to know that vehicle purchase papers are complex documents that are not easy to understand;

i. M&M knew or had reason to know that Nash would rely on M&M's expertise in preparing the purchase documents;

j. M&M presented the sale documents to Nash and included an inaccurate mileage representation with reason to know that Nash would not be able to discover M&M's fraud until after the purchase;

k.  M&M's actions were intended to induce Nash to sign the vehicle sale contract;

l.  M&M fraudulently misrepresented to Nash, on several occasions, that the Vehicle only had 47,667 miles on it, when it actually had approximately 165,778 miles;

m.  M&M knew or should have known that its representations, at the time of making them, were false;

n.  M&M's representations were intended to induce Nash to sign the vehicle sale contract;

o.  Nash reasonably relied on M&M's representations;

p.  A reasonable person would have relied on M&M's representations;

q.  Nash was harmed by M&M's representations by agreeing to purchasing the Vehicle or purchasing the Vehicle for more than its actual value and/or for more than Nash would have paid had he been given an accurate description of the Vehicle;

r.  M&M benefited from its misrepresentations by selling the Vehicle to Nash for more than its actual value and/or for more than Nash would have paid had he been given an accurate description of the Vehicle.

80.  Denying rescission of the purchase would be inequitable.

81.  As a result of M&M's fraud in the inducement, Nash is entitled to recover his actual damages, including out-of-pocket costs, and rescission of the purchase.

82.  If the Court finds that M&M's actions were deliberately and knowingly

*Nash Thiry v. M&M USA Motors, Inc.*
Complaint

taken, M&M may be liable to Nash for punitive damages.

## COUNT VIII

### Constructive Fraud

83.     Nash incorporates paragraphs 18 through to 38 as though the same were set forth at length herein.

84.     M&M is liable to Nash for constructive fraud by engaging in the following conduct:

      a.   M&M had a duty under FOA and FDUTPA to represented accurately the condition of a Vehicle;

      b.   M&M had a duty under FOA and FDUTPA not to alter or change the Vehicle's odometer mileage;

      c.   M&M fraudulently misrepresented to Nash, on several occasions, that the Vehicle only had 47,667 miles on it, when it actually had approximately 165,778 miles;

      d.   M&M published an advertisement identifying the Vehicle and the inaccurate mileage;

      e.   M&M represented to Nash that the information on its advertisement was correct;

      f.   M&M prepared purchase documents for the Vehicle indicating inaccurate mileage;

      g.   M&M knew or should have known that its representations, at the time of making them, were false;

*Nash Thiry v. M&M USA Motors, Inc.*
Complaint

h.  M&M knew or had reason to know that vehicle purchase papers are complex documents that are not easy to understand;

i.  M&M knew or had reason to know that Nash would rely on M&M's expertise in preparing the purchase documents;

j.  M&M presented the sale documents to Nash and included an inaccurate mileage representation with reason to know that Nash would not be able to discover M&M's fraud until after the purchase;

k.  M&M's actions were intended to induce Nash to sign the vehicle sale contract;

l.  M&M fraudulently misrepresented to Nash, on several occasions, that the Vehicle only had 47,667 miles on it, when it actually had approximately 165,778 miles;

m.  M&M knew or should have known that its representations, at the time of making them, were false;

n.  M&M's representations were intended to induce Nash to sign the vehicle sale contract;

o.  Nash reasonably relied on M&M's representations;

p.  A reasonable person would have relied on M&M's representations;

q.  Nash was harmed by M&M's representations by agreeing to purchasing the Vehicle or purchasing the Vehicle for more than its actual value and/or for more than Nash would have paid had he been given an accurate description of the Vehicle;

*Nash Thiry v. M&M USA Motors, Inc.*
Complaint

r.   M&M benefited from its misrepresentations by selling the Vehicle to Nash for more than its actual value and/or for more than Nash would have paid had he been given an accurate description of the Vehicle.

85.   M&M abused its fiduciary or confidential relationship, and otherwise took an unconscionable advantage to the detriment and expense of Nash.

86.   Denying rescission of the purchase would be inequitable.

87.   As a result of M&M's constructive fraud, Nash is entitled to recover compensatory damages.

88.   If the Court finds that M&M's actions were deliberately and knowingly taken, M&M may be liable to Nash for punitive damages.

## COUNT IX

### Misleading Advertising

89.   Nash incorporates paragraphs 18 through to 38 as though the same were set forth at length herein.

90.   M&M is liable to Nash for misleading advertising by advertising to the general public that the Vehicle as having 47,667 miles, when in fact it had approximately 165,778 miles.

91.   As a result of M&M's misleading advertisement, Nash is entitled to actual damages. §817.41(6), Fla. Stat.

92.   Furthermore, and in addition to all other remedies prescribed by law, M&M is liable to Nash for punitive damages. §817.41(6), Fla. Stat.

93.   Nash is further entitled to recover his costs and reasonable attorneys' fees.

*Nash Thiry v. M&M USA Motors, Inc.*
Complaint

§817.41(6), Fla. Stat.

## TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38, Nash hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Nash Thiry respectfully requests judgment be entered against Defendant M&M USA Motors, Inc. for the following:

A.       Declaratory judgment that M&M violated the FOA, the MMWA, and the FDUTPA;

B.       Treble damages, or $10,000.00, whichever is greater, pursuant to the FOA, 49 U.S.C. §32710(a);

C.       Actual damages pursuant to the FDUTPA, §501.211, Fla. Stat.;

D.       Returning of the Vehicle and reimbursement of monies pursuant to the UCC, §672.608, Fla. Stat.;

E.       Actual damages for M&M's fraudulent misrepresentation;

F.       Punitive damages for M&M's fraudulent misrepresentation;

G.       Actual damages for M&M's negligent misrepresentation;

H.       Punitive damages for M&M's negligent misrepresentation;

I.       Actual damages for M&M's fraud in the inducement;

J.       Punitive damages for M&M's fraud in the inducement;

K.       Actual damages for M&M's constructive fraud;

L.       Punitive damages for M&M's constructive fraud;

*Nash Thiry v. M&M USA Motors, Inc.*
Complaint

M.      Actual damages for M&M's misleading advertising, Fla. Stat., §817.41(6);

N.      Punitive damages for M&M's misleading advertising, Fla. Stat., §817.41(6);

O.      Attorneys' fees and costs pursuant to the FOA, 49 U.S.C. §32710(b), the FDUTPA, §501.2105, Fla. Stat., the MMWA, 15 U.S.C. §2310(d)(1), and §817.41(6), Fla. Stat.;

P.      Awarding Nash any pre-judgment and post-judgment interest as may be allowed under the law; and

Q.      Any other relief that this Court deems appropriate.

Dated: August 13, 2020.                    Respectfully Submitted,

By: */s/ Santiago J Teran*
    Santiago J Teran
    FL #1018985
    PRICE LAW GROUP, APC
    1001 N Federal Hwy, Ste 349
    Hallandale, FL 33009
    C: (347) 946-7990
    T: (818) 600-5586
    F: (818) 600-5486
    E: santiago@pricelawgroup.com
    *Attorneys for Plaintiff*
    *Nash Thiry*